UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TEONA PAGAN,

                    Plaintiff,

          v.

RESEARCH FOUNDATION OF THE CITY
UNIVERSITY OF NEW YORK, CITY
UNIVERSITY OF NEW YORK, DEBORAH
CHENG, GREGORY STEPHENSON, AND
ANDREW RICH,

                    Defendants.

No.  24-CV-6500 (RA)

<u>OPINION & ORDER</u>

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Teona Pagan brings this employment discrimination action against Defendants Research Foundation of the City University of New York ("RFCUNY"), the City University of New York ("CUNY"), Deborah Cheng, Gregory Stephenson, and Andrew Rich for purported violations of Title VII of the Civil Rights Act of 1964, the First Amendment, New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). Plaintiff raises nine claims arising from her firing from RFCUNY in 2022. Plaintiff was represented by counsel when she filed the operative complaint, but she is now proceeding *pro se*.

Pending before this Court is CUNY, Cheng, and Rich's (collectively, the "CUNY Defendants") partial motion to dismiss Plaintiff's Title VII disparate treatment and retaliation claims against CUNY (Counts 2–3); First Amendment claims against CUNY (Counts 4–5); NYSHRL discrimination and retaliation claims against Rich (Counts 6–7); NYSHRL aiding and abetting claim against Cheng and Rich (Count 8); and NYCHRL claim against Cheng and Rich (Count 9). *See* Mot. to Dismiss, Dkt. No. 28. For the reasons that follow, their motion is granted

as to Counts 4 (First Amendment retaliation), 5 (Free Exercise), 6 (NYSHRL discrimination), and 7 (NYSHRL retaliation), and denied in all other respects. The Court also grants Plaintiff an opportunity to amend.

## BACKGROUND

The Court draws the following facts from the Amended Complaint and documents attached to it. Well-pleaded facts are assumed to be true for purposes of resolving the pending motion to dismiss. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

In November 2021, Plaintiff began working for RFCUNY—"a private, not-for-profit education corporation that supports CUNY faculty and staff in identifying, obtaining and administering government and private funding"— as the Fellowships and Public Service Program Coordinator for the Colin Powell School for Civic and Global Leadership, a division of the City College of New York. First Am. Compl. ("FAC") ¶¶ 4–5, 9–11, Dkt. No. 10. Among her other job duties, Plaintiff was responsible for recruiting students to ten different fellowships, including the Mixner Fellowship. *Id.* ¶¶ 11–12. The purpose of this fellowship was "to place students in internships focused on the promotion of LGBTQ rights and causes." *Id.* ¶ 12.

In April 2022, Plaintiff "experienced a religious conversion" to Christianity, and "suddenly found her sincerely held religious beliefs to be in conflict with" her job responsibilities for the Mixner Fellowship, which required "supporting and promoting" what she had come to view as a "sinful lifestyle." *Id.* ¶¶ 13–14. On April 27, 2022, Plaintiff had a conversation with her supervisor Defendant Cheng, in which she requested that "this one aspect of her job . . . be assigned to another employee," in light of the "conflict she was experiencing" between her job responsibilities for the fellowship and her religious beliefs. *Id.* ¶ 15. Cheng told Plaintiff that she would think about the request and get back to her. *Id.* ¶ 16. At Cheng's request, she and Plaintiff met again the following

day to discuss her request. *Id.* ¶ 17. During this meeting, Plaintiff "reiterated her need for an accommodation," because her "religious beliefs were in conflict with the aspect of her position that required her to place students at internships that promoted and advanced sin in this world." *Id.* ¶ 17. Cheng informed Plaintiff that she needed more time to consider the request. *Id.* ¶ 18.

Less than two weeks later, on May 9, 2022, Plaintiff received an email from Defendant Stephenson, whom she alleges was then Human Resources ("HR") Director of RFCUNY. *Id.* ¶ 8.[1] Stephenson directed Plaintiff to submit a written request for accommodation, which she did the next day. *Id.* ¶¶ 19–20.

Approximately one month later, on June 9, 2022, Plaintiff met with Defendants Stephenson and Rich, the Dean of the Colin Powell School, who is a gay man. *Id.* ¶¶ 9, 21. Plaintiff says that during this meeting "no exploration of possible accommodations" took place. *Id.* ¶ 22. Instead, she "was interrogated about her religious beliefs and made to repeat and restate them over and over with specific citations to Scripture." *Id.* ¶ 21. Rich purportedly appeared to be "visibly enraged throughout the meeting." *Id.* ¶ 23. Before the meeting concluded, Stephenson asked if Plaintiff or Rich had anything else they wished to say. *Id.* ¶ 24. Plaintiff asked if she could recite a scripture passage, at which point, she alleges, Dean Rich "curtly" replied that "[s]he can say whatever she wants." *Id.* Plaintiff recited from Leviticus 20:13, saying, "If a man also lie with mankind, as he lieth with a woman, both of them have committed an abomination: they shall surely be put to death; their blood shall be upon them." *Id.* She then told Defendants, "Once I know, I am responsible. Once I am responsible, I will be held accountable. I am now saved, sanctified, and filled with the Holy Ghost, so I must move accordingly. I have accepted Jesus Christ as my Lord

---

[1] According to RFCUNY, Stephenson was formerly the Associate Director of HR for RFCUNY. *See* Dkt No. 30 ¶ 8.

and Savior and there are certain beliefs and behaviors that come with that." *Id.*

"Minutes later," Plaintiff received an email from Rich, which attached a denial of her request for an accommodation on the basis of "undue hardship," which he had signed. *Id.* ¶ 25, Ex. B. The body of the email stated, "Mr. Stephenson has also given you until 4 pm to reply to both of us on this matter," which Plaintiff interpreted to mean that Defendants were asking for her resignation. *Id.* ¶ 26. Plaintiff alleges that she requested more time to reply, and that there was "some back and forth" between the parties, with Defendants continuing to "pressure [her] to make a decision that day," though Plaintiff ultimately did not respond. *Id.* ¶¶ 27–28.

About one week later, on June 17, 2022, Plaintiff received notice that she was being placed on administrative leave, effective immediately, purportedly without explanation. *Id.* ¶ 29. On June 22, 2022, she received written notification that her contract would not be renewed. *Id.* ¶ 30. Until then, Plaintiff says, "it was understood by all parties that [her] contract would be renewed for at least the foreseeable future." *Id.* ¶ 31.

Plaintiff alleges that Defendants' cited reason for denying her request for accommodation—"undue hardship"—was "disingenuous and unsupported by actual facts." *Id.* ¶ 41. She contends that that she was "treated . . . differently . . . because she is a devout Christian," and terminated and retaliated against for her religious identity, for making a request for reasonable accommodation, and for quoting scripture. *Id.* ¶¶ 43–44, 46, 48, 56, 59, 62.

Plaintiff received right-to-sue letters from the United States Equal Employment Opportunity Commission against RFCUNY and CUNY on May 31, 2024. *Id.* ¶ 36, Exs. C–D. Then represented by counsel, she commenced this action on August 28, 2024. FAC, Dkt. No. 1. On September 12, 2024, Plaintiff filed her Amended Complaint, asserting nine causes of action: against RFCUNY and CUNY for failure to accommodate, disparate treatment, and retaliation on

the basis of religion in violation of Title VII of the Civil Rights Act of 1964 (Counts 1–3); against CUNY for First Amendment retaliation and violation of the Free Exercise Clause under the Civil Rights Act of 1871, 42 U.S.C. § 1983 (Counts 4–5); against RFCUNY and Rich for discrimination and retaliation in violation of the NYSHRL, N.Y. Exec. Law § 296(1) (Counts 6–7); against Cheng, Stephenson, and Rich for aiding and abetting in violation of the NYSHRL (Count 8); and against RFCUNY, Cheng, Stephenson, and Rich for violations of the NYCHRL, N.Y.C. Admin. Code. § 8-107 (Count 9). FAC ¶¶ 37–62. The CUNY Defendants have moved to dismiss all claims against them, except for failure to accommodate. Neither RFCUNY nor Stephenson has moved to dismiss. *See* Dkt. Nos. 30, 65.

## LEGAL STANDARDS

### I.    Federal Rule of Civil Procedure 12(b)(6)

The CUNY Defendants' motion argues primarily that the Amended Complaint must be dismissed under Rule 12(b)(6) for failure to state a claim. To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a Rule 12(b)(6) motion, a court must "construe[] the complaint liberally, accepting all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), but it will not "accept as true a legal conclusion couched as a factual allegation,"

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, citations, and footnotes and adopt all alterations.

*Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). At this early stage, the question is "not whether [the plaintiff] will ultimately prevail," but "whether [her] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011).

## II.     Federal Rule of Civil Procedure 12(b)(1)

Defendants have also moved to dismiss Plaintiff's First Amendment claims against CUNY for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See Goonewardena v. New York*, 475 F. Supp. 2d 310, 321 (S.D.N.Y. 2007) (Eleventh Amendment immunity is "properly decided under a Rule 12(b)(1) motion"). "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it . . . ." *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021). To survive such a motion, a plaintiff must "allege facts that affirmatively and plausibly suggest that" the court has subject matter jurisdiction, and "courts need not credit a complaint's conclusory statements" that lack factual support. *Id.*

## DISCUSSION

The CUNY Defendants have moved to dismiss Plaintiff's Title VII disparate treatment and retaliation claims against CUNY (Counts 2–3); First Amendment claims against CUNY (Counts 4–5); NYSHRL discrimination and retaliation claims against Rich (Counts 6–7); NYSHRL aiding and abetting claim against Cheng and Rich (Count 8); and NYCHRL claim against Cheng and Rich (Count 9). For the reasons set forth below, their motion is granted as to Counts 4 (First Amendment retaliation), 5 (Free Exercise), 6 (NYSHRL discrimination), and 7 (NYSHRL retaliation), and denied as to Counts 2 (Title VII disparate treatment), 3 (Title VII retaliation), 8 (NYSHRL aiding and abetting), and 9 (NYCHRL). Plaintiff's application to file a second amended

complaint is also granted.

## I.  Deference Due in Light of Plaintiff's *Pro Se* Status

Plaintiff asks this Court to construe her pleadings liberally and to "treat factual additions" contained in her opposition as "supplemental to the operative complaint." Opp'n 1. As a general matter, courts read *pro se* litigants' filings liberally and their complaints "to raise the strongest arguments [they] suggest." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014). This obligation makes it appropriate for a court to "consider factual allegations made by a pro se party in his papers opposing the motion" as supplementing the complaint where the pro se litigant also wrote the complaint. *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013); *see Johnson v. Wright,* 234 F. Supp. 2d 352, 356 (S.D.N.Y. 2002) ("Examining such materials is consistent with the principle that a court may not dismiss a *pro se* complaint unless it is beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."); *Willensky v. Lederman*, No. 13-CV-7026 (KMK), 2015 WL 327843, at *4 (S.D.N.Y. Jan. 23, 2015) ("In deciding a motion to dismiss a pro se complaint, . . . it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint."). Where, as here, however, retained counsel drafted the complaint, it is "not deserving of the special solitude due [to] pro se litigants." *Clarke v. White Plains Hosp.*, 650 F. App'x 73, 75 (2d Cir. 2016) (summary order); *see also Lombardo v. JPMorgan Chase Bank, N.A.*, No. 20-CV-6813 (VB), 2025 WL 707500, at *1 n.1 (S.D.N.Y. Mar. 5, 2025). Accordingly, while this Court reads Plaintiff's *pro se* opposition liberally, it will not treat her first Amended Complaint with special solicitude.

## II.  Title VII

The CUNY Defendants first move to dismiss Plaintiff's Title VII retaliation and disparate treatment claims against CUNY. For the reasons that follow, the motion is denied.

### A. Discrimination Claim Against CUNY

"Title VII prohibits employers from discriminating against their employees with respect to compensation, terms, conditions, or privileges of employment based on protected classifications, including religion . . . ." *Mumin v. City of New York*, 760 F. Supp. 3d 28, 44 (S.D.N.Y. 2024) (quoting 42 U.S.C. § 2000e-2(a)(1)). Plaintiff's disparate treatment claim is evaluated under the *McDonnell Douglas* burden-shifting analysis. *Id.* at 50. On a motion to dismiss, Plaintiff bears a *de minimis* burden to plead a *prima facie* case of disparate treatment under this framework "by establishing (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Id.* At this early stage of litigation, "the allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018); *see Littlejohn v. City of New York*, 795 F.3d 297, 308–09 (2d Cir. 2015) (explaining that a Title VII complaint need not plead a *prima facie* case, but rather must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

Defendants dispute only the fourth element—that Plaintiff has plausibly alleged circumstances giving rise to an inference of discrimination. To satisfy this element on a motion to dismiss, "a plaintiff must plausibly allege that her Title VII protected characteristic (here, religion . . . ) was a motivating factor in her employer's decision to take an adverse action against her." *Salas v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 687 (S.D.N.Y. 2018). At this early stage of the litigation, "the question is not whether a plaintiff is likely to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of unlawful discrimination, *i.e.*,

whether plaintiffs allege enough to nudge their claims across the line from conceivable to plausible." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). A plaintiff must, nonetheless, provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent," either directly or indirectly. *Id.* at 87 (explaining that discrimination may be established indirectly by "showing that the employer's stated reason for its employment action was pretext . . . or by otherwise creating a mosaic of intentional discrimination by identifying bits and pieces of evidence that together give rise to an inference of discrimination"). "[G]eneralized, conclusory allegations" are not enough. *Mumin*, 760 F. Supp. 3d at 51.

Plaintiff alleges that she suffered adverse action "because she is a devout Christian," because of her "expression of faith," and because of her "beliefs." FAC ¶¶ 1, 43–44. The CUNY Defendants argue that Plaintiff has effectively put forth "two different theories of discrimination," both of which are insufficiently supported by factual content to be plausible under *Iqbal*. Mot. to Dismiss 5–6. They contend that Plaintiff's first theory, that she was discriminated against because she is a devout Christian, is not supported by evidence of criticism or comments about her religion, or allegations that a similarly situated employee received better treatment. *Id.* at 6. They assert that Plaintiff's second theory, that she was treated differently because of her "expression of faith," fails because an employer may legally discipline an employee for offensive comments made to other employees without committing discrimination. Mot to Dismiss 6–7.

Plaintiff has plausibly alleged circumstances that give rise to an inference of discrimination based on her religious beliefs. "Under Title VII and the NYSHRL, a plaintiff need not prove (or plead) that the causal link between injury and wrong is so close that the injury would not have occurred but for the act." *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 325–26 (S.D.N.Y. 2020). "An inference of discrimination can arise from circumstances including . . . the

sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312. In considering this sequence of events, evidence of "temporal proximity" between the time an employer learns of an individual's inclusion in a protected class and termination "is often an important consideration." *Farmer*, 473 F. Supp. 3d at 326. The Court finds that the close temporal proximity between Plaintiff's disclosure of her conversion to Christianity to her supervisor—as well as Rich's alleged "enraged" reaction when Plaintiff expressed her beliefs to him, FAC ¶ 23—and her termination shortly thereafter supports an inference of discriminatory intent and is sufficient to plead a *prima facie* case of disparate treatment under Title VII.

The CUNY Defendants argue that Plaintiff was fired due to offensive comments she made to Rich rather than because of her beliefs. They urge this Court to rely on *Rightnour v. Tiffany & Co.*, in which the court granted the defendant's motion for summary judgment, explaining that "courts have consistently held that it does not constitute discrimination to discipline employees for making offensive comments in the workplace, even when those comments are tied to religion." 354 F. Supp. 3d 511, 525 (S.D.N.Y. 2019). Their argument is premature.

"Whether an employer had a nondiscriminatory reason for firing a plaintiff is a question that a court reaches only at step two of the *McDonnell Douglas* framework . . . ." *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 70 (S.D.N.Y. 2015). "[T]he Second Circuit instructed in *Littlejohn* that, in order to survive a motion to dismiss, the plaintiff cannot reasonably be required to allege more facts in the complaint than the plaintiff would need to defeat a motion for summary judgment made prior to the defendant's furnishing of a non-discriminatory justification." *Id.* (quoting *Littlejohn*, 795 F.3d at 311). Defendants will have the opportunity to make and brief their argument with the benefit of discovery on summary judgment, and the Court will not decide it now. *See Gadling-Cole v. W. Chester Univ.*, 868 F. Supp. 2d 390, 397 (E.D. Pa. 2012) ("At this early procedural

posture, the Court does not have the benefit of discovery to determine whether the Plaintiff was discriminated against because of her Baptist religion or rather was disliked by the Social Work department because of her personal animosity towards the LGBTQ community. Once a record is developed, the court will have the ability to examine relevant factors in determining whether the Plaintiff was discriminated against because of her Baptist faith . . . .").

Conceding that courts typically consider such arguments on summary judgment, the CUNY Defendants argue that discovery is not necessary because Plaintiff admits to making offensive comments in her pleadings. *See* Mot. to Dismiss 7–8 ("There is no other plausible way to interpret calls for the wholesale slaughter of an entire class of persons that are made (i) at the workplace; and (ii) in front of an individual who belongs to the class in question."). The Court has no reason to doubt that the CUNY Defendants found Plaintiff's comments to be "inherently offensive," Mot. to Dismiss 8, or that, as employers, they take seriously any such comments made in the workplace. But at this stage of the litigation, without the benefit of a factual record, the Court must assess only whether Plaintiff has plausibly alleged circumstances giving rise to an inference of discrimination and may not evaluate an employer's purported non-discriminatory reasons for firing.

Defendants identify only one other court that has purportedly addressed a similar argument on a motion to dismiss, in the Eastern District of Kentucky, *Wehrly v. Allstate Ins. Co.*, No. 21-CV-135 (KKC), 2022 WL 303665 (E.D. Ky. Feb. 1, 2022), *aff'd on other grounds*, No. 23-CV-5736, 2024 WL 1308245 (6th Cir. Mar. 27, 2024). This decision, in addition to not being binding on this Court, does not support the CUNY Defendants' position. In *Wehrly*, the plaintiff alleged that he was fired because of his comments, which he characterized as "historical and psychological arguments" regarding LGBTQ+ people and their rights, rather than "just religious in nature." *Id.*

at *4. Far from considering the defendant's purported basis for termination on a motion to dismiss, the *Wehrly* court concluded that the plaintiff's allegations "simply [did] not allow the Court to draw a reasonable inference of discrimination." *Id.* The Court therefore does not find this case, or the CUNY Defendants' arguments on this point, persuasive.

Accordingly, at this early stage of litigation, the Court cannot rule as a matter of law that Plaintiff was fired because of a request for accommodation, or because of her religion, or for a non-actionable reason. The Court does, however, find that Plaintiff has "allege[d] enough to nudge [her] claims across the line from conceivable to plausible." *Vega*, 801 F.3d at 87. The CUNY Defendants' motion to dismiss Plaintiff's Title VII discrimination claim is thus denied.

### B. Retaliation Claim Against CUNY

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e–3(a). Like Plaintiff's Title VII discrimination claim, the Court evaluates claims brought under this anti-retaliation provision under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). Under this framework, a plaintiff first bears a *de minimis* burden to "establish a *prima facie* case of retaliation by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). Once the initial burden is met, "a presumption of retaliation" arises, which the employer "may rebut by articulating a legitimate, non-retaliatory reason for the adverse employment action." *Farmer*, 473 F. Supp. 3d at 330 (quoting *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015)). "If the employer

provides such a reason, "the presumption of retaliation dissipates," and the burden shifts back to the plaintiff to prove "that the desire to retaliate was the but-for cause of the challenged employment action." *Id.* The CUNY Defendants only dispute that Plaintiff has satisfied the fourth element: a causal connection between the protected activity and the adverse employment action. Because they also "assum[e]" without admitting that Plaintiff has satisfied the first element, Mot. to Dismiss 9, the Court considers the first and fourth element in turn.

### 1. Protected Activity

The CUNY Defendants do not contest but rather "assum[e]" that Plaintiff has adequately alleged protected activity by requesting a religious accommodation under Title VII.[3] *Id.* In light of this assumption, the Court's obligation to read the Amended Complaint in the light most favorable to Plaintiff, and for the reasons below, the Court finds that Plaintiff has adequately pled participation in a protected activity.

In a Title VII retaliation action, protected activity "refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). To satisfy this element, "a plaintiff need not establish that the conduct [s]he opposed was actually" statutorily prohibited, "so long as [s]he can establish that [s]he possessed a good faith, reasonable belief" that it was. *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999).

Here, Plaintiff's purported protected activity is her request for a religious accommodation. As the CUNY Defendants rightly note, the Second Circuit has not yet decided whether a request for a religious accommodation constitutes protected activity under Title VII, Mot. to Dismiss 9

---

[3] In spite of the CUNY Defendants' assumption that Plaintiff's request constituted protected activity, they note that some out-of-circuit courts have held that a request for a religious accommodation does not amount to protected activity under Title VII. *See* Mot. to Dismiss 9 & n.3 (citing *Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 358 (6th Cir. 2020); *Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018); *Bushra v. Main Line Health, Inc.*, 709 F. Supp. 3d 164, 172-73 (E.D. Pa. 2023)).

n.3, but district courts in this circuit have held that it does, *see, e.g.*, *Jenkins v. N.Y. City Transit Auth.*, 646 F. Supp. 2d 464, 473 (S.D.N.Y. 2009) ("The plaintiff sufficiently alleged that she engaged in a protected activity, because a claim for retaliation can be based upon a request for reasonable accommodation [for religious beliefs]."). Indeed, this Court has as well. *See Jeffrey v. Montefiore Med. Ctr.*, No. 11-CV-6400 (RA), 2013 WL 5434635, at *23 (S.D.N.Y. Sept. 27, 2013) ("[Plaintiff's] repeated discussions with her supervisors in March 2009 regarding her need for religious accommodation suffice to establish her participation in a protected activity and [defendant's] knowledge of it.").[4]

Accordingly, the Court finds that Plaintiff has adequately pled participation in a protected activity.

## 2. Causation

The CUNY Defendants hinge their argument on the fourth factor, maintaining that Plaintiff has not plausibly alleged that her request for an accommodation was the but-for cause of her termination. Mot. to Dismiss 9. They assert that her only pertinent allegations are "conclusory" and "contradicted by more specific allegations elsewhere in her pleading." *Id.* In opposition, Plaintiff contends that the temporal proximity between her submission of a request for an accommodation and her termination shortly thereafter "supports an inference of retaliation." Opp'n 3. The Court agrees with Plaintiff, and finds that she has plausibly alleged causation.

---

[4] In reaching this result, other district courts have been guided by the rule of this circuit, applied to claims of retaliation under the Americans with Disabilities Act, "that requests for disability accommodations are protected activity." *Chavis v. Wal-Mart Stores, Inc.*, 265 F. Supp. 3d 391, 407 n.6 (S.D.N.Y. 2017); *see Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002) ("[P]laintiffs do allege that they were seeking reasonable accommodation of [plaintiff's] disability—which constitutes protected activity under Section 504/ADA."). There is good reason to import this rule to the Title VII context. Indeed, the Second Circuit has instructed that the framework for analyzing Title VII retaliation claims is the same as that for ADA retaliation claims. *See Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999) (stating that courts should "apply the framework used in analyzing retaliation claims under Title VII in analyzing a claim of retaliation under the ADA").

To state a retaliation claim under Title VII, Plaintiff must allege that her protected activity "was the but-for cause of the adverse employment action." *Ninying v. N.Y.C. Fire Dep't*, 807 F. App'x 112, 115 (2d Cir. 2020) (summary order). "But-for causation does not, however, require proof that retaliation was the only cause of the employer's action; instead, it requires only that absent the retaliatory motive, the adverse action would not have occurred." *Farmer*, 473 F. Supp. 3d at 333. Causation may be shown either "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant," or "indirectly, by showing that the protected activity was followed closely by the discriminatory treatment." *Hicks*, 593 F.3d at 170.

A plaintiff's requirement to plead "but-for causation . . . does not alter [her] ability to demonstrate causation . . . through temporal proximity." *Vega*, 801 F.3d at 91. There is no "bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation," but the Second Circuit "ha[s] previously held that five months is not too long to find the causal relationship." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010); *see also Farmer*, 473 F. Supp. 3d at 333–34 (finding that retaliation claim was adequately pled where no more than "three weeks separated [plaintiff's] first request for an accommodation and her firing"); *Dawson v. Security Servs. of Conn. Inc.*, No. 20-CV-01310 (SVN), 2022 WL 17477601, at *10 (D. Conn. Dec. 6, 2022) (finding plaintiff had made *prima facie* case of retaliation where two months had elapsed between request for religious accommodation and termination).

Plaintiff has plausibly alleged causation. The close temporal proximity between her first verbal request for accommodation on April 27, 2022 and her firing on June 22, 2022 supports a causal connection between the two. Plaintiff put Defendant Cheng on notice of her request for a religious accommodation on April 27, 2022. FAC ¶ 15. At the urging of Defendant Stephenson, she then submitted a written request for accommodation on May 10, 2022. *Id.* ¶¶ 19–20. "Minutes"

after her meeting with Defendants Stephenson and Rich on June 9, 2022, during which Plaintiff alleges that she was "interrogated about her religious beliefs," and Rich appeared "enraged," he denied her request for accommodation. *Id.* ¶¶ 9, 21–25, Ex. B. Little over a week later, on June 17, 2022, she was placed on administrative leave, and, on June 22, 2022, she received written notification that her contract would not be renewed. *Id.* ¶¶ 29–30. In short, less than two months passed between when Plaintiff submitted her request for accommodation and when she was terminated. This is sufficient to plead a causal connection.

The CUNY Defendants argue that Plaintiff's allegation that she was fired because of her request for accommodation is conclusory and contradicted by her other allegations that she was fired for quoting scripture, her religious identity, and expressing her beliefs. *See* Mot. to Dismiss 9. Defendants are correct that the Court need not accept as true "general allegations that are contradicted by more specific allegations in the Complaint." *See DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151–52 (2d Cir. 2014). Here, however, Plaintiff's pleadings are not so contradictory as Defendants suggest. Plaintiff has alleged that she was "interrogated about her religious beliefs" and "made to" support them "with specific citations to Scripture" during a meeting about her request for an accommodation. FAC ¶ 21. Reading the allegations in the light most favorable to Plaintiff, the other cited bases for her firing (e.g., quoting scripture) are intertwined with her request for accommodation. Furthermore, under Title VII, Plaintiff need not show that retaliatory motive was the sole basis for her firing, so long as it was a "substantial" or "motivating" factor. *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001) ("A plaintiff may establish Title VII retaliation even when a retaliatory motive is not the sole cause of the adverse employment action, or when there were other objectively valid grounds for a discharge."). Accordingly, the Court does not find Plaintiff's allegations to be contradictory.

In short, in light of the temporal proximity between Plaintiff's protected activity and her termination, the Court's obligation to draw all reasonable inferences in favor of Plaintiff, and the "reduced prima facie requirements applicable at this stage," *Farmer*, 473 F. Supp. 3d at 334 (quoting *Littlejohn*, 795 F.3d at 316), the Court finds that Plaintiff has plausibly pled a claim of retaliation under Title VII.

### III. Section 1983 Claims

Plaintiff next alleges, under § 1983, that CUNY retaliated against her in violation of the First Amendment and her right to free exercise of religion. FAC ¶¶ 47–52. The motion to dismiss these claims is granted.

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity," and this principal extends to "arms of a state." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). New York, moreover, "has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983." *Bryan v. City Univ. of N.Y.*, No. 20-CV-1627, 2020 WL 1434708, at *1 (S.D.N.Y. Mar. 23, 2020) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977)).

Because CUNY is an arm of New York State, *see Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 81–83 (2d Cir. 2004) (per curiam), it is immune from suit in this Court for claims brought pursuant to § 1983. *See Bryan*, 2020 WL 1434708, at *2 (dismissing Section 1983 claims against CUNY on Eleventh Amendment grounds); *see also Ndemenoh v. City Univ. of N.Y.*, No. 20-CV-4492 (LLS), 2020 WL 4547302, at *5 (S.D.N.Y. Aug. 4, 2020) (same). Accordingly, the CUNY Defendants' motion to dismiss Plaintiff's First Amendment retaliation and free exercise claims is

granted.

### IV. New York State Human Rights Law Claims

Plaintiff further alleges that Rich violated the NYSHRL by discriminating and then retaliating against her due to her request for religious accommodation. She further asserts that Rich and Cheng aided and abetted RFCUNY and/or CUNY in their violations of the NYSHRL. The motion to dismiss Plaintiff's NYSHRL claims is granted as to her discrimination and retaliation claims against Rich and denied as to her claim for aiding and abetting against Rich and Cheng.

#### A. Discrimination Claim Against Rich

Plaintiff's discrimination claim under the NYSHRL against Rich must be dismissed. New York Executive Law makes it unlawful "[f]or an employer" to discriminate on the basis of protected characteristics, including an individual's "creed." N.Y. Exec. Law § 296(1). The New York Court of Appeals has instructed that NYSHRL does not, however "render employees liable as individual employers," *Doe v. Bloomberg, L.P.*, 167 N.E.3d 454, 459 (2021), regardless of how senior an employee is within an organization, *see Bueno v. Eurostars Hotel Co., S.L.,* No. 21-CV-535 (JGK), 2022 WL 95026, at *7 (S.D.N.Y. Jan. 10, 2022) (explaining that, following *Doe v. Bloomberg*, a "corporate employee—even its owner and CEO—no longer qualifies as an employer" under the NYSHRL). Accordingly, Rich, the Dean of the Colin Powell School, "was not [Plaintiff's] employer for purposes of the NYSHRL" and her discrimination claim against him must be dismissed. *Doyle v. Am. Glory Rest. Corp.*, No. 23-CV-7624 (PAE), 2024 WL 1466161, at *8 (S.D.N.Y. Apr. 4, 2024).

#### B. Retaliation Claim Against Rich

Plaintiff's retaliation claim against Rich is also dismissed because Plaintiff has not alleged

that she participated in protected activity under the NYSHRL.

Although the NYSHRL generally tracks Title VII, the two laws part here. Like Title VII, under the NYSHRL, "[p]rotected activity refers to action taken to protest or oppose statutorily prohibited discrimination." *Karupaiyan v. CVS Health Corp.*, No. 19-CV-8814 (KPF), 2021 WL 4341132, at *27 (S.D.N.Y. Sept. 23, 2021). Contrary to this district's interpretation of Title VII, however, "New York's intermediate appellate courts have long made clear that under the NYSHRL, a request for reasonable accommodation is not a protected activity for purposes of a retaliation claim." *See Medina v. AAM 15 Mgmt. LLC*, 750 F. Supp. 3d 332, 346 (S.D.N.Y. 2024). In reaching this result, New York's courts have reasoned that a request for religious accommodation is not action taken in protest or opposition to discrimination. *See id.* at 347. The basis for Plaintiff's retaliation claim under Title VII therefore does not suffice to state a retaliation claim under the NYSHRL.

Plaintiff also has not pled that any complaint or action she took after the denial of her request for accommodation formed the basis for her firing. Such activity, if any, might constitute protected activity under the NYSHRL. *See Serdans v. N.Y. & Presbyterian Hosp.*, 977 N.Y.S.2d 196, 198 (N.Y. App. Div. 2013) ("Plaintiff's complaint about [the] defendant's alleged failure to implement the parties' agreement to accommodate her disability (as distinct from her initial request for an accommodation) does constitute a protected activity for purposes of her [NYSHRL] claim[] of retaliation."). Although Plaintiff alleges that she did not respond to Defendants' attempts to "pressure [her] to make a decision" about whether to resign after the denial of her accommodation request, FAC ¶¶ 27–28, she does not contend that she acted in opposition or protest to what she believed to be illegal conduct on the part of Defendants. Accordingly, the motion to dismiss

Plaintiff's NYSHRL retaliation claim against Rich is granted.

### C.  Aiding and Abetting Claim Against Cheng and Rich

The CUNY Defendants' motion to dismiss the aiding and abetting claim against Cheng and Rich is, however, denied. Under the NYSHRL, it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). An individual defendant may be liable under the NYSHRL for aiding and abetting a principal if he "actually participated in the conduct giving rise to a discrimination [or retaliation] claim," even if he "lacked the authority to either hire or fire the plaintiff." *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (discrimination); *see also See Edelman v. NYU Langone Health System*, 141 F.4th 28, 49 (2d Cir. 2025) (retaliation). He may be liable "even where an individual defendant's actions serve as the predicate for the employer's vicarious liability, so long as the employer's conduct has also been found to be discriminatory under the NYSHRL." *Farmer*, 473 F. Supp. 3d at 337; *Xiang v. Eagle Enters., LLC,* No. 19-CIV-1752 (PAE), 2020 WL 24894, at *5 (S.D.N.Y. Jan. 16, 2020). "The aider and abettor must also share the intent or purpose of the principal actor" and allegations of intent "cannot be based on status or job title alone." *Nezaj v. PS450 Bar and Restaurant*, 719 F. Supp. 3d 318, 333 (S.D.N.Y. 2024).

The CUNY Defendants argue that Plaintiff's aiding and abetting claim should be dismissed because she has not stated predicate claims for discrimination and retaliation under the NYSHRL. Plaintiff, however, has alleged that Rich and Cheng aided and abetted the conduct of "RFCUNY and/or CUNY," FAC ¶ 59, and RFCUNY has not moved to dismiss the NYSHRL discrimination and retaliation claims against it. Moreover, Plaintiff has alleged that RFCUNY may be construed as either a joint employer or a single integrated employer with CUNY, *see* FAC ¶ 6 & n.1–2, which

the CUNY Defendants have not contested at this stage of the litigation. *Cf. Emmons v. City University*, 715 F. Supp. 2d 394, 411–12 (E.D.N.Y. 2010) (noting CUNY and RFCUNY's "corporate muddle" and declining to parse it on motion to dismiss in light of "fact-intensive" nature of the inquiry required to do so). Even if RFCUNY does not constitute an employer of Rich or Cheng, an individual may be said to aid and abet the discriminatory conduct of a principal who is not the abettor's employer. *See Griffin v. Sirva, Inc.*, 76 N.E.3d 1063, 1070 (N.Y. 2017) (explaining that newspaper company that publishes employment listings that discriminate on the basis of sex aids and abets such discrimination). The Court will therefore proceed to consider Plaintiff's aiding and abetting claims.

Plaintiff has plausibly alleged that Rich individually participated in discriminatory conduct. Rich—along with Stephenson from HR—was present for the June 9, 2025 meeting, during which Rich allegedly appeared "enraged" by Plaintiffs' statements. FAC ¶¶ 19–24. He personally signed and sent Plaintiff the denial of accommodation form minutes after this meeting concluded. *Id.* ¶ 25, Ex. B. Although Plaintiff does not allege who sent her the notifications that she would be placed on administrative leave, or that her contract would not be renewed, *id.* ¶¶ 29–30, drawing all reasonable inferences in favor of Plaintiff, it is plausible that Rich, as Dean of the Colin Powell School, was involved in these decisions as well.

Whether Plaintiff has stated a claim against Cheng, Plaintiff's supervisor, is a closer question. Plaintiff alleges that she initially reported her requests for accommodation to Cheng. *Id.* ¶¶ 15–18. Plaintiff also pleads that RFCUNY represented that Cheng and Rich were responsible for the denial of her reasonable accommodation request. *Id.* ¶ 33. While the issue is a close one, drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has stated an aiding and abetting claim against both Rich and Cheng. The CUNY Defendants' motion to dismiss

this claim is therefore denied.

### V. New York City Human Rights Law Claim

Finally, the CUNY Defendants move to dismiss Plaintiff's NYCHRL claim against Cheng and Rich. Although the Amended Complaint does not clearly articulate the nature of Plaintiff's claims under the NYCHRL, the Court reads it to raise claims of disparate treatment and retaliation under NYCHRL. The motion to dismiss these claims is denied.

"NYCHRL claims are to be reviewed more liberally than Title VII claims, and the provisions of the NYCHRL must be construed broadly in favor of plaintiffs alleging discrimination." *Levy v. Legal Aid Soc'y,* 408 F. Supp. 3d 209, 217 (E.D.N.Y. 2019). The Court's determination that Plaintiff's retaliation and disparate treatment claims survive under Title VII "dictates the same result under the NYCHRL, whose retaliation [and disparate treatment] standard[s] [are] similar to—but in part more permissive than—[their] federal and state analogues." *Farmer*, 473 F. Supp. 3d at 334 (retaliation); *see also Price v. Cushman & Wakefield*, 829 F. Supp. 2d 201, 219 n.15 (S.D.N.Y. 2011) (disparate treatment). Unlike the NYSHRL, the City Council's 2019 amendment to the NYCHRL "makes clear" that a request for a reasonable accommodation constitutes protected activity. *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 722 (S.D.N.Y. 2020) ("The City Council's amendment, effective November 11, 2019, makes clear that requesting a reasonable accommodation is a protected activity under the NYCHRL."). The CUNY Defendants' motion to dismiss Plaintiff's NYCHRL is therefore denied.

### VI. Amendment

In her opposition papers, Plaintiff seeks leave to amend any deficiencies. Opp'n 4. This Court has discretion to determine whether to grant or deny such a request, *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007), but "it is rare that such leave should be denied"

following a court's Rule 12(b)(6) dismissal, "especially when there has been no prior amendment." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991), *overruled on other grounds by* 544 U.S. 197 (2005); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires").

Because Plaintiff has not yet had the opportunity to amend with the benefit of this Court's decision on a Rule 12(b)(6) motion, the Court grants Plaintiff's request to file a second amended complaint. If she chooses to file a new complaint, Plaintiff should attempt to address each basis for dismissal that the Court raised above, as well as the other grounds the CUNY Defendants have raised in their motion papers.

## CONCLUSION

The CUNY Defendants' motion to dismiss is granted in part and denied in part. Plaintiff shall have thirty days to file a second amended complaint, provided she has a good faith basis to do so. The Clerk of Court is respectfully directed to close the motion pending at Dkt. No. 28.

SO ORDERED.

Dated:    September 30, 2025
          New York, New York

                                    _____
                                    Ronnie Abrams
                                    United States District Judge